Plaintiff
v.

Obama For Senate Campaign ("OFSC") (Corporation), et al

Case No 04C 7072

**FILED**
**FEB - 1 2005**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

NOTICE OF MOTION

Under penalty of perjury pursuant to federal law, RJM does verify that he did file this notice, the accompanying motion, and attached exhibit with the United States District Court for Northern IL on or before ~~1/31/05~~, by inserting 2 stamped copies thereof in the drop box on the first of 20th Floor of the Dirksen Fed. Bldg, at 219 S. Dearborn St. Chicago IL.
Robert J. More
2008 S. Blue Island
Chicago IL 60608
312 455-8385

2/1/05

CERTIFICATE OF SERVICE

Not applicable as no Defendants named in the complaint on file in this case have yet been served

United States District Court
Northern District of Illinois
Eastern Division

Robert J More
Estate of Robert J. More
Plaintiff

v.

Obama For Senate Campaign ("OFSC") (Corporation), et al
Defendants

Case No 04C 7072.

**PLAINTIFF, RJM'S VERIFIED MOTION OF 1/31/05 TO PROVIDE NOTICE TO THE COURT OF DEVELOPMENTS IN THE PROSECUTION OF THIS CASE, AND TO OBTAIN PERMISSION TO FILE ALL DOCUMENTS FILED IN THE FUTURE IN THE CASE ON THE WEBSITE OF THE DNRCPN AND TO REMIT THE SUM OF $1 TO DEFRAY FILING COSTS OF THE SUIT**

Now comes the Plaintiff, Robert J. More ("RJM") to move this Court: to confirm that it has been provided notice of recent developments in the prosecution of this case, and to grant RJM permission to file all documents that need be filed in this case in the future via posting on the website of the DNRCPN (until RJM can get a website set up for this case), and to grant RJM permission to remit $1 to the Clerk to defray the costs of the filing of this suit and in support and explanation of such petition, RJM avers and explains as follows :

1. On 1/20/05, RJM filed a motion titled: PLAINTIFF, RJM'S VERIFIED MOTION OF 1/31/04 TO PROVIDE NOTICE TO THE COURT OF DEVELOPMENTS IN THE PROSECUTION OF THIS CASE

2. In that motion, RJM informed the Court that he would endeavor to file an amended complaint in this case by 1/31/05.

3. Due to a backlog of legal problems that RJM has had hanging over his head for some time (all of which have been imputable to activity having been conducted upon what can be identified to constitute the *Reign of Terror Standard* to which reference has been included in earlier motions - by both govt actors and those who presume that they are immune from any legal liability of any sort, no matter what they do, so long as they can either obfuscate, deceive or buy, their way through whatever proceedings are ever conducted in a given court system), which condition has been severely exacerbated by the problems that RJM has encountered from a profiteering landlord who has been endeavoring in an ongoing campaign to get RJM out of the residence in which RJM has been staying for the past several years and who has employed numerous devious and unjustified means in an ongoing effort to effectively force RJM out of the building so that the landlord can run a concentration camp type arrangement (and continue to rake in profits hand over fist , at the expense of his caviling inmate/tenants) in which he can get away with anything with impunity, RJM has not come anywhere near to getting himself dug out from under the avalanche under which he has found himself.

4. In fact, the effective lockout RJM suffered in December 2004 and the loss of the use of a phone has caused complications that have left RJM incapable of attending to anything other than learning the eviction court procedures and landlord/tenant legal theories and endeavoring to keep various meritorious claims afloat through this period and continuing to read through Police Misconduct in the spare time he finds.

5. At this time, RJM finds he must attend to keeping himself from being evicted because of the difficulty that homelessness would pose regarding the legal affairs in which RJM finds it necessary to continue to compete, and to the several conflicts in which matters have been adjudicated upon the predatory side of what can be identified to constitute the protective-predatory fault line, such that RJM will not be filing an amended complaint in this case, either

1

this week or next, and since there is no prejudice to the Defendants named in this case, by RJM taking more time to complete research on all relevant issues, the causes of action included in the complaint having only accrued in late October of 2004, RJM will shoot for the filing of that complaint by the 1rst of March.

6.　At this time, RJM must file several documents this week in the forcible entry and detainer action, and also, a counterclaim including petitions for tort damages and injunctive relief in order to go on the offensive in that case to hopefully deter the landlord from further predatory conduct, responses to documents issued in Appeals # 04-2629 and 03-2964 in the Illinois Appellate Court and a Sup Ct. Rule 19 petition regarding

constitutional challenges to numerous laws and regulations that indisputably constitute unconstitutional restrictions on inalienable liberties, a document in a case in which RJM was maliciously prosecuted for exercising a constitutionally protected right against a law firm whose members consider themselves to be above any law, a response to an order in the USDC of Massachusetts regarding a sum of money the S.E.C. fraudulently converted from RJM, a small claims complaint for an assault with a knife committed against RJM in 2003, a document involving all of the complexities of a service-evading villain in regard to FRCP # 4 in a case in which RJM's sibling was bilked of what is for him a very substantial sum of money and meet with an attorney regarding the ligaments RJM tore in his wrist when hit by a car in August of 2004.

7.　Once the slate is cleared in these regards, RJM can return to the complaint this motion regards.

8.　Since a.) none of the statute of limitations on the counts included in that complaint would have, had the complaint not been filed already, run before the last week of October of 2005 and only the defamation count SOL would have then expired, b.) the issues involved in terms of burdens of proof for various counts, the use and timing of discovery to prevent parties from unjustifiably changing positions during the prosecution of the case, and the issues involving the Monell claims (such as experts, breadth of discovery etc.) and other such-like matters involve multi-factored formulas and have many hidden pitfalls, c.) the issues RJM apprehends that he must raise in order to ensure that no exercise of government authority is ever again exercised outside of what can be identified to constitute acceptable limits in the adjudication of this suit and d.)the issue of whether the fruits to be obtained by the prosecution of the suit, would, in the balance, be sufficient to justify the costs of it; still remain unresolved in RJM's understanding, RJM has had to temporarily put the treatise <u>Police Misconduct</u>, down and attend to the other matters enumerated supra. (RJM has also been researching the issue of filing criminal complaints upon a qui tam basis under 18 U.S.C. 242 in this case, but is not yet certain where the pitfalls might be in that endeavor).

9.　Recently, a jury rendered a verdict for the defense in the racial discrimination case of Nehan v J.B. Hunt before Judge W. Anderson in this building, which also gave RJM pause. In that case, Nehan did not name expert witnesses early enough in the prosecution of the case to be permitted to use them, did not get even one black person on the jury, did not keep what appeared to RJM to be prejudicial testimony out of the defense's case and provided what must have been an unconvincing plaintiff's testimony and got nothing out of the prosecution after six years of litigation. In that case, Attorney Amu had nothing but high praise for the impartiality demonstrated by Judge Anderson and still no one ended up with anything but whatever benefit to society the cost to JBH of defending the case would produce in terms of a disincentive to discrimination.

10.　From this and other similar cases, RJM has come to realize the enormity of the distance between a meritorious claim and any recovery upon that claim and has had to reconsider to what extent he is obliged under the circumstances to endeavor to rectify the injustices involving federal claims in this Court.

2

11. On the other hand, when RJM sees so much of the dysfunction of the Chicago Police Dept ("CPD"), such as happened again on 1/26/05 when a young woman in a law library chronicled her failures to get a police report made by the members of the 12th District upon all of the usual excuses (why did you wait so long when she reported the crime 13 mos before the SOL would expire), RJM is goaded to get his position in regard to that and other policing entities sufficiently solidly established to keep them out of RJM's way as RJM continues to help bear the burden against the many evils afflicting this society and to keep them out of the way of his allies in this endeavor as well..

12. RJM has contacted the CPD for purposes of meeting with the Superintendent if that would be possible in order to see what can be done about the problems addressed in RJM's complaint and in other instances in which RJM has ended up entangled with the CPD.

13. It may very well take organized protests to get any acceptable resolution of the problems plaguing that entity as well, and RJM is continuing to consider the possibilities in this regard.

14. The upshot of all of this is that RJM is not at all convinced that the real answer to the problems that bring RJM into this Court would not be found in either a repeal of all laws that might ever be invoked to prevent burden-bearers such as RJM from protecting their own property, liberty and lives and redressing injuries done to the same on their own; or else in getting himself deputized so that whatever the laws might be, RJM is no longer prevented from preventing and rectifying injustices on his own accord. Had RJM been deputized on 10/21/04, the injuries this complaint concerns would never have occurred and RJM would no longer have to be entangled in this most distress-causing legal system, in which it takes such seemingly Herculean efforts for parties positioned as un-enviably, as RJM is, to keep the activity of other actors in court theatres from being conducted outside of what can be identified to constitute acceptable limits to the great affliction of the members of the public.

15. Regarding RJM's amended complaint, RJM also has not yet succeeded in closing off various alternative approaches to the prosecution of the case, since various approaches may not be mutually exclusive; but matters such as raising all issues RJM evidently ought to raise in this prosecution in order to establish precedents which would benefit all burden-bearers, while not at the same time scaring off attorneys who would fear the political costs of participating in the presentation of such type issues, has presented a thorny problem. RJM also intends to add the "Estate of RJM" as a co-plaintiff in this suit, but has not succeeded in finding the handle on this issue either. RJM may also petition the Court to have a pro bono attorney assigned to the case, at least to provide a sounding board for RJM's many unresolved concerns.

16. RJM will continue to prosecute this case in reliance upon the principles articulated in among other cases, that of *Taylor v Southern Ry. Co* (1934, 6 F.Supp.259) - "dismissal for want of prosecution is justified only where the court can say as a matter of law on undisputed facts that the plaintiff intended to abandon the cause of action" (acknowledging that this district court case is not necessarily controlling on this court). RJM can only be expected to do what he is capable of doing and ultimately RJM's objective as RJM understands it must be to do what is necessary at every juncture in the prosecution of this case to retain a morally legitimate claim to implement whatever measures would need to be implemented to ensure that no injustice ultimately prevails in the matters this case concerns, regardless of what ever occurs in any court proceeding.

17. This having been stated, RJM does not apprehend any reason that the anyone would recognize RJM as any type of firebrand, since no one RJM knows demonstrates more respect for the legitimate exercise of authority than does RJM, but rather as a burden-bearer whose role is to among other things, help restore the rule of law to this declining country.

18. In fact, RJM is endeavoring to conduct his activity so as to avoid earning the disrespect and distrust of all of the authorities with whom he comes into contact, not excluding this Court, - even to the extent that when the prosecution of this case is over that the Court would sign a document in the form of a *nihil obstat* endorsing RJM's candidacy for conditional deputization

3

and it is in that light that RJM submits this document.

19. RJM hopes that he at least can continue to endeavor to keep from becoming, for others, without exception, what he has been so distressed to find, in those cases in which he so frequently has found such, for himself - a source of affliction and distress rather than assistance, in the difficult, burdensome and demanding engagement with the problem of conditional salvation that is the problem , whether a given person admits it or not or even realizes it or not, of every man, woman and child in the theatre of earthly existence.

20. Howsoever grim prospects appear, all is not yet lost and RJM realizes that there is no time like the present to recommit himself to a ZERO TOLERANCE of anything that is unstalwartlike approach to life's problems and afflictions and this RJM must continue again and again and again and again to do, hopefully helping cause others to take up what is admittedly for fallen human nature, a *not irresistibly appealing* to understate the case, burden - the burden of moral accountability.

21. Bottom line, RJM recognizes that besides the obligation to ensure that no wrongdoer get away with anything at the expense of the Catholic Church on one's record of accountability, there are also innumerable other obligations to which RJM like everyone else is subject, such as the duty to spare others grief, to the extent this objective can be accomplished without the making of any unjustified compromises in so doing (cf Ja. 2:3, 1 Tim. 5:22 et al); because in the end, the ultimate issue will not be how much one temporarily suffered in the earthly theatre, but rather, how many souls ended up avoiding hell and in heaven and at how high a place in heaven or at how much less afflicting a place in hell than where they could have ended up, for those who still end up in hell, due to the conduct of a given individual - this consideration hopefully would move RJM to always endeavor to "leave others an out" if he can evidently justify doing so in a given case, because when persons have helped spare RJM grief, in every such case, RJM has ended up finding it much easier to continue to endeavor to satisfy the requirements of God's Commandments (as conversely RJM is tempted to sloth and rebellion against God when human malice causes him pain or hardship), and has concluded that this approach must likewise affect others. As God will not force anyone to obey him but uses inducements and on the other hand, disincentives, to accomplish the objective, so RJM concludes that he must continue to conduct his activity such that in whatever he does, it helps induce others to fight the spiritual warfare for eternal salvation rather than to disregard the peril in which all are here below, found to be, or to give up the fight or rebel against God.

22. Furthermore, it goes without saying that inducing people to voluntarily conduct their activity so as to not unjustifiably injure others by it, and to make restitution when they do, is a method far preferable to the others available by which property, liberty and life can be protected.

23. RJM also recognizes that from the lamentable and in many cases, appalling, conditions of the courts in this country at this time as have been addressed even by Judges such as Fifth C.C.A. Edith Jones and Andrew Napolitano and by so many others, that it cannot be concluded that a just resolution of the torts this case concerns cannot be obtained in this particular court; so the excuse that the system is hopelessly broken that some pro ses use to justify not prosecuting cases with all the work this entails is not one RJM is tempted to employ.

24. RJM herein moves the Court to permit him to file documents in this case by posting them on the website of the DNRCPN until this Court goes to electronic filing as the coordination of the composition, uploading, downloading, printing and filing with all of the travel (RJM was sent flying off bicycles by cars twice in 2004), sloppy weather conditions, medal detectors, losing of items, and other hazards and adversities that are the fare of RJM and persons situated similarly render the prosecution of cases in courts prohibitively expensive, not to mention the *bulk of the* materials that would be conserved via website litigation.

25. RJM also moves the Court to permit RJM to remit the sum of $1 to defray the costs of the filing of this suit, for the accomplishment of various purposes, RJM will explicate later.

26. Under time constraints, RJM truncates this motion here and now, as is, in the form in

4

which it is found to be, claiming that the non-presentation to this Court of the innumerable issues RJM apprehends that it will be necessary to raise in the prosecution of this case, could not under the circumstances in which RJM has found it necessary to present this motion, constitute a waiver of any of those issues.

Wherefore, RJM moves this Court to confirm that it has been provided notice of recent developments in the prosecution of this case, and to grant RJM permission to file all documents that need be filed in this case in the future via posting thereof on the website of the DNRCPN (until RJM can get a website set up for this case), and to grant RJM permission to remit $1 to the Clerk to defray the costs of the filing of this suit and to confirm that it has been informed that RJM is committed, based upon his admitted uncertainty as to what adversities the future holds for him, to file an amended complaint in some form or another by 3/1/2005 in this case, and to consider whether the court system would not be less burdened and world would not be at least a little bit less violent, dangerous and insecure place if RJM were deputized.

Under penalty of perjury, pursuant to all applicable federal statutes, I aver to the veracity of all factual averments contained herein.
Respectfully submitted,
Robert J. More

United States District Court
Northern District of Illinois
Eastern Division

Robert J More
Estate of Robert J. More